UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| NICHOLE MAY, | ) | No. CV 17-4085-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 1, 2017, seeking review of the Commissioner's denial of her application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on July 5, 2017, and July 28, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on March 14, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

## II.

## BACKGROUND

Plaintiff was born on September 10, 1974. [Administrative Record ("AR") at 32, 43, 62.] She has past relevant work experience as a receptionist, personal assistant/attendant, and cosmetic salesperson. [AR at 31-32, 56.]

On July 9, 2013, plaintiff filed an application for SSI payments, alleging that she has been unable to work since July 29, 2012. [AR at 20.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 115-17.] A hearing was held on November 17, 2015, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 41-61.] A vocational expert ("VE") also testified. [AR at 55-60.] On February 3, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability since July 9, 2013, the date the application was filed. [AR at 20-33.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 15-16.] When the Appeals Council denied plaintiff's request for review on April 25, 2017 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where

evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A. THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe"

impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 9, 2013, the application date. [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy; trochanteric bursitis; obesity; hypothyroidism; hypertension; major depressive disorder; post-traumatic stress disorder ("PTSD"); attention deficit disorder ("ADD"); panic disorder; cognitive impairment; and history of opiate dependence. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically

equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform sedentary work as defined in 20 C.F.R. § 416.967(a),[2] as follows:

> [She] has the residual functional capacity to perform sedentary work . . . including lifting up to 5 pounds frequently and up to 10 pounds occasionally, sitting up to 6 hours total in an 8-hour workday, and standing/walking up to 2 hours total in an[] 8-hour workday, with the following restrictions: she must avoid ladders, ropes and scaffolds as well as workplace hazards; she can only occasionally climb ramps and stairs; she can only occasionally balance, kneel, crouch, and crawl; she requires a one-minute break after one hour of being in any position; and she is limited to unskilled work with occasional public contact.

[AR at 24.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a receptionist, personal assistant/attendant, and cosmetic salesperson. [AR at 31-32, 57.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "addresser" (Dictionary of Occupational Titles ("DOT") No. 209.587-010), "bonder, electronics" (DOT No. 726.685-066), and "touch-up screener" (DOT No. 726.684-010). [AR at 32-33, 57-59.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since July 9, 2013, the application date. [AR at 33.]

/

/

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she: (1) discounted plaintiff's subjective symptom testimony and the testimony of lay witnesses; (2) assessed the medical evidence; (3) determined at step three of the sequential evaluation that plaintiff's mental and physical impairments or combination of impairments, did not meet or equal a listed impairment, including listings 12.02 and/or 12.05; and (4) committed harmful error at step five of the sequential evaluation because the occupation of "addresser" is obsolete, the occupation of touch up screener is not compatible with "unskilled" work, and none of the three occupations accommodates her need to take a one-minute break every hour. [JS at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A. SUBJECTIVE SYMPTOM TESTIMONY

### 1. Legal Standard

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (citing Garrison, 759 F.3d at 1014-15); see also Soc. Sec. Ruling ("SSR")[3] 16-3p.[4]

---

[3] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[4] On March 28, 2016, shortly after the ALJ's decision in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's
(continued...)

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. During this inquiry, the ALJ may use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1284). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

### 2. Plaintiff's Subjective Symptom Testimony

The ALJ generally discounted plaintiff's subjective symptom testimony "because the objective clinical findings do not support the extreme limitations alleged." [AR at 25.] Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective

---

[4](...continued)
record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit in Trevizo noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).
    The ALJ's February 2016 decision was issued before March 28, 2016, when SSR 16-3p became effective. Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

symptom testimony. [JS at 3-7, 14-15.]

### a. Physical Symptom Testimony

After reviewing the objective medical evidence and plaintiff's allegations relating to her physical conditions, the ALJ found plaintiff's allegations "less than fully credible because the objective clinical findings do not support the extreme limitations alleged." [AR at 25.] She further noted:

> [T]he objective medical evidence is consistent with a physical residual functional capacity finding limiting [plaintiff] to sedentary work with the postural and environmental limitations described above. Additionally, the undersigned has considered [plaintiff's] allegations and testimony regarding her lower back pain and difficulty with prolonged sitting and standing, and determined that a sit/stand option is appropriate and consistent with the evidence.

[AR at 27.]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the <u>only</u> basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ reviewed plaintiff's subjective symptom testimony and stated that she was "not entirely credible for the reasons explained in th[e] decision." [AR at 25.] The ALJ then reviewed the medical evidence regarding plaintiff's physical conditions. [AR at 25-27.] As noted by the ALJ, that evidence included x-ray and MRI evidence (in September 2012 and November 2015) of advanced degenerative disc changes in the lumbar spine; treatment with a pain management specialist that included at least four rounds of epidural steroid injections, as well as bilateral facet medial branch blocks; physical examination evidence consistently showing decreased range of motion of the lumbar spine, with "severe pain and guarding," and "severe

tenderness" to palpation, as well as an antalgic gait, and positive straight leg raising tests; an EMG in November 2012 that "confirmed ongoing mild bilateral L5 nerve root irritations," and another in November 2015 that reflected "bilateral, chronic L5 and S1 radiculopathies"; an internal medicine consultative examination in November 2013 that reflected muscle spasm, tenderness, decreased range of motion of the lumbar spine, positive straight leg raising tests, a slightly antalgic gait, and decreased motor strength and sensation in the right leg, with an x-ray showing evidence of a paraspinal muscle spasm with moderately severe degenerative disc disease at L5-S1; and treatment with a number of narcotic medications (including Norco, Percocet, and Valium, which plaintiff testified she was taking daily [AR at 50]), with plaintiff admitting in April 2015 that she was "taking up to 4 Norco per day to control the pain." [AR at 25-27 (citations omitted).] The ALJ also commented on a few treatment notes purportedly showing improvement,[5] e.g., plaintiff reported in November 2012 that "her symptoms improved" after the epidural steroid injections "at the sacroiliac joint and in the right trochanteric bursa"; her treating pain management doctor reported in December 2012 that she "had made significant progress after the second epidural steroid injection" and "continued to improve her daily activity and functional capacity" (although, as noted by the ALJ, the doctor at that time *again* administered additional steroid injections and medial branch blocks, recommended physical therapy, and decreased plaintiff's pain medications -- and plaintiff returned a month later in January 2013 reporting increased pain); in November 2014 plaintiff reported to her doctor that she was "doing much better" and "experiencing only 'intermittent lower back pain'"; and in June and August 2015 her physical examinations "showed improvement in functionality" (although she also reported in August 2015 that she reinjured her back and underwent an MRI, which showed moderate-severe facet arthropathy and severe disc

---

[5] Even if the ALJ intended this to be a second reason for discounting plaintiff's subjective symptom testimony -- which is not entirely clear -- an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her findings. See, e.g., Holohan, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). In this case, the record -- including the clinical findings -- more consistently reflects plaintiff's chronic pain and limitations with only occasional and short-lived evidence of improvement with treatment.

dessication and moderate disc height loss, with a circumferential disc bulge that "may contact the bilateral exiting L5 nerve roots," and an EMG study reflecting bilateral, chronic L5 and S1 radiculopathies). [AR at 25-27.] The ALJ then stated her conclusion that "the objective medical evidence is consistent with a physical [RFC] finding limiting [plaintiff] to sedentary work with the postural and environmental limitations described" in the RFC. [AR at 27.] She also stated that she "considered" plaintiff's allegations and testimony regarding her lower back pain and difficulty with prolonged sitting and standing, and "determined that a sit/stand option is appropriate and consistent with the evidence." [AR at 27.]

As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).[6] The "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" Treichler, 775 F.3d at 1103 (citation omitted); Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). Here, the ALJ did not identify the testimony she found not credible and "link that testimony to the particular parts of the record" supporting her credibility determination. Brown-Hunter, 806 F.3d at 494. In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not

---

[6] In Laborin, the Ninth Circuit found that the ALJ's "boilerplate" language discrediting the claimant's testimony because it is inconsistent with the RFC indicates that the ALJ "did not properly 'incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as [he or she] is required to do.'" Laborin, 867 F.3d at 1153 (citations omitted; alteration in original). Here, the ALJ's "boilerplate" language stating that the RFC was consistent with the objective medical evidence, also appears to indicate that the ALJ did not properly incorporate plaintiff's testimony regarding her symptoms and limitations into the RFC, notwithstanding the ALJ's determination to include an option for plaintiff to take a one-minute break after one hour of being in any position. See id. at 1153 n.4 (stating that an ALJ "cannot . . . properly evaluate the claimant's credibility based on a predetermined RFC").

10

arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014)).

Additionally, although the ALJ stated that based on plaintiff's testimony that she had difficulty with prolonged sitting and standing a "sit/stand option is appropriate and consistent with the evidence," it is improper for an ALJ to substitute her own opinion for that of a medical professional. See Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion and [s]he must not succumb to the temptation to play doctor and make [her] own independent medical findings.") (internal quotation marks, alterations, and citations omitted). Indeed, the ALJ did not explain how the alleged "sit/stand option" -- which was only stated in the RFC determination to be a "one-minute break after one hour of being in any position" -- was in any way consistent with plaintiff's medical treatment records or her testimony regarding her pain; neither did the ALJ point to any evidence showing that taking a "one-minute break" after an hour of being in "any position" would give plaintiff sufficient relief from her pain such that she could then continue working. In fact, plaintiff testified that she can only sit or stand for about five to ten minutes at a time before getting "really uncomfortable" [AR at 53], and her treating physician Mark Smith, M.D., opined that plaintiff "would be unable to perform the demands of even sedentary work," as she is incapable of sitting for more than a total of 15 minutes in an 8-hour workday.[7] [AR at 30 (citation omitted).]

Based on the foregoing, lack of medical evidence cannot form the sole basis for discounting

---

[7] As discussed herein, the Court will not address whether the ALJ's reasons for discounting the medical opinions of plaintiff's treating physicians were specific and legitimate. The ALJ on remand must provide legally sufficient reasons for the weight given to the medical opinions of record.

pain testimony and, even if the Court considers that in addition to relying on the objective medical evidence to discount plaintiff's testimony the ALJ implicitly included evidence of improvement in plaintiff's physical condition as a second reason for discounting plaintiff's subjective symptom testimony, neither reason was a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom pain testimony.

Remand is warranted on this issue.

### b. Mental Health Testimony

With respect to plaintiff's mental health allegations, the ALJ concluded the following:

> Ultimately, the objective medical evidence regarding [plaintiff's] mental impairments are not commensurate with disabling limitations. While [she] seemed to have been struggling with increased symptoms around the time of her onset date, she appears to have stabilized significantly by 2013 and remained as such, with only brief periods of increased symptoms through 2015 . . . .

[AR at 29.]

Plaintiff argues that "the longitudinal picture of her emotions is bleak." [JS at 5.] She notes that she has been treated "with a number of different medications that were frequently changed and tampered with, in an attempt to control her symptoms." [Id.] Additionally, she frequently reported hallucinations and sleep disturbances. [JS at 5-6 (citing AR at 286, 294, 295, 307, 388).] She argues that the lack of objective medical evidence as to mental illness is not a specific, clear and convincing reason to discredit plaintiff's subjective reports of psychiatric symptoms, especially because "objective testing is different where a mental, as opposed to a physical, impairment is at issue." [JS at 14.] Defendant responds that "Plaintiff's allegations of a disabling mental impairment are not fully credible because the record routinely notes a mild condition that is stable with treatment." [JS at 11 (citing AR at 28-29).] Defendant then points to some of plaintiff's treating records showing "only mild recurrent depression," mental status examinations that were "entirely normal," and records showing that plaintiff was "stable on meds." [JS at 11-12 (citing AR at 446-47, 479, 625-26, 631-32, 639-40).] Defendant submits that "[e]xcept on one occasion, these records show no more than moderate functional limitations," and "routinely show successful

treatment using medication and therapy." [JS at 12 (citing AR at 625-64).]

As the Ninth Circuit recently explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017 (citing Holohan, 246 F.3d at 1205); see also Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in [the] treatment notes," which show that "although [plaintiff] had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01); see also Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Here, as she did with plaintiff's physical treatment records, the ALJ reviewed plaintiff's mental health records. [AR at 27-29.] She acknowledged that plaintiff was "receiving treatment with psychiatrist June Fujii, M.D., well before her alleged onset date" and, although Dr. Fujii's notes were "largely illegible," it was "clear" that as early as June 2011 plaintiff was diagnosed with PTSD, depression, a panic disorder, and ADD, had experienced an increase in depressive symptoms due to a job loss, and that Dr. Fujii made changes in plaintiff's medications. [AR at 27-28.] After April 2013, plaintiff was treated by Tracy Cogbill, M.D., who reported that plaintiff was tearful and had poor insight and judgment, but otherwise, according to the ALJ, "was noted to have entirely normal responses" to the mental status examination. [AR at 28.] The ALJ noted that Dr. Cogbill stopped plaintiff's ADD medication and then reinstated it when plaintiff reported she

had a "horrible" week without that medication; that Dr. Cogbill consistently noted that plaintiff was "stable" on her medications, and was "doing well" until September 2014 when she reported an increase in anxiety and depression, and her medication regimen was changed; that by December 2014 she was again stable on her medications and was "noted to have only 'some' continued cognitive concentrating impairment"; that by June 2015 she was "doing fine" on her medications; and in October 2015, she was still "stable" on her medications despite the loss of her relationship with her fiancé, although she still exhibited a depressed mood. [AR at 27-28 (citations omitted).]

As with plaintiff's physical treatment records, the ALJ appears to have improperly relied solely on a lack of objective medical evidence to discount plaintiff's subjective symptom testimony regarding her mental health symptoms. Even if the ALJ implicitly included evidence of improvement as an additional reason to discount that testimony, as with her determination regarding plaintiff's testimony regarding her physical symptoms, neither reason was a specific, clear and convincing reason supported by substantial evidence.

Remand is warranted on this issue.

### 3. Lay Witness Testimony

The ALJ noted that she had considered the third-party statements completed by plaintiff's friends, Peri Farris and Adrienne Hampton, and by plaintiff's brother, William May. [AR at 29.] The ALJ stated the following regarding these statements:

> The allegations of plaintiff's friends and brother do not establish that [she] is disabled. Since they are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the allegations is questionable. Moreover, by virtue of their close personal relationships with [plaintiff], they cannot be considered disinterested third party witnesses whose allegations would not tend to be colored by affection for [plaintiff] and a natural tendency to agree with the symptoms and limitations [plaintiff] alleges. Most importantly, significant weight cannot be given to their allegations because they are simply not consistent with the preponderance of the evidence or the opinions and observations by the medical doctors in this case.

[AR at 29.]

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take

into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017) (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

However, a claimant's personal relationship with the lay witness is not a valid reason to discount his or her observations. Diedrich, 847 F.3d at 640. The Ninth Circuit has held that "regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." Id. (citing Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (internal quotation marks omitted)); see also Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members.") (citation omitted). Thus, plaintiff's close relationship with Farris, Hampton, and May is not a germane reason to discount the weight of their observations.

Next, the Court is not persuaded by the ALJ's finding that because these lay witnesses are "not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the allegations is questionable." [AR at 29.] Lay witnesses are not required to have medical training, or to provide exact details of their observations. That is what makes them "lay" witnesses. Discounting the "accuracy" of a lay witness' statement because the witness is not medically trained would allow an ALJ to routinely reject most such statements for this reason alone. Here, the witnesses merely offered their observations of plaintiff's behavior in a succinct and straight-forward manner and did not represent that they were offering any sort of medical opinion. [See, e.g., AR at 248-49 (Hampton Statement); 250-51 (Harris Statement); 252-53 (May Statement).] This was not a reason germane to these witnesses to reject their statements.

Finally, a lack of support from the "overall medical evidence" is also not a proper basis for disregarding a lay witness' observations. Diedrich, 847 F.3d at 640 (quoting Bruce v. Astrue, 557

F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit [the witness'] lay testimony as not supported by medical evidence in the record.")). The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone "is precisely why such evidence is valuable at a hearing." Id. (citing Smolen, 80 F.3d at 1289 (holding that ALJ erred where the ALJ rejected the testimony of claimant's family members about claimant's symptoms because the medical records did not corroborate those symptoms)). Thus, a lack of support from medical records is not a germane reason to give "little weight" to those observations.

Thus, none of the ALJ's reasons for discounting the lay witnesses' observations is germane. Remand is warranted on this issue.

**B.  REMAINING ISSUES**

Because the matter is being remanded based on the ALJ's failure to provide legally sufficient reasons for discounting plaintiff's subjective symptom testimony and the testimony of the lay witnesses, the Court will not address plaintiff's remaining issues herein.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or

misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective symptom allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony regarding her mental and physical impairments and limitations. In making this assessment, the ALJ on remand shall also reassess the medical opinion evidence of record and must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. The ALJ on remand shall also reconsider the lay witness testimony and provide legally sufficient reasons germane to each witness if the ALJ determines that his or her testimony should be disregarded. Based on the ALJ's reassessment of plaintiff's subjective symptom testimony, the lay witness testimony, and the medical evidence of record, the ALJ shall consider the limitations, if any, resulting from plaintiff's physical and mental impairments, reassess plaintiff's RFC, and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[8] See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

/

/

---

[8] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 4, 2018

                                            PAUL L. ABRAMS
                               UNITED STATES MAGISTRATE JUDGE